IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RAYMOND W. BAARS                                                                                          PLAINTIFF

             v.                                      CASE NO.         11-2061

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                         DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background:**

The plaintiff filed his applications for DIB and SSI on July 29, 2008, alleging an onset date of June 3, 2008, due to plaintiff's neck and back injuries and numbness in limbs. (T. 61; 98-104; 105-108). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on August 24, 2009. Plaintiff was present and represented by counsel.

At the time of the administrative hearing on August 24, 2009, plaintiff was 49 years of age and possessed a 9th Grade education. The Plaintiff had past relevant work ("PRW")

experience as a car detailer/salesman; light mechanic; forklift driver; and tank setter (T. 158).

On January 28, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's situational depression; herniated disc and degenerative disc disease did not meet or equal any Appendix 1 listing. T. 44. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, sit six hours in an eight hour workday, stand/walk for two hours in an eight hour workday, frequently climb, balance, crawl, stoop, kneel, and crouch, and frequently handle and finger and that he could do work in which interpersonal contact was incidental to the work performed and the complexity of tasks was learned and performed by rote, with few variables and little judgment required. T. 46. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of an assembler . T. 48.

The Plaintiff contends that the ALJ erred in A) failing to find the diagnosis of neuropathy to be severe; and B) in his RFC assessment.

**II.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome,

or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683

F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to occasionally lift/carry ten pounds and frequently lift/carry less than ten pounds, sit six hours in an eight hour workday, stand/walk for two hours in an eight hour workday, frequently climb, balance, crawl, stoop, kneel, and crouch, and frequently handle and finger and that he could do work in which interpersonal contact was incidental to the work performed and the complexity of tasks was learned and performed by rote, with few variables and little judgment required. (T. 46).

### A. RFC

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,*

353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

Regarding Plaintiff's physical RFC, the ALJ stated the following:

> While it is conceded that the claimant has a very small herniated disc at the C5-6 level, Dr. McAuley's own records fail to document any encroachment upon the spinal cord. In addition, there is no evidence of sensory or reflex loss or motor deficit, although the evidence reflects chronic pain symptoms in the claimant's neck with radiation to his left arm. [...] Therefore, the claimant's allegations regarding his musculoskeletal complaints are out of proportion to the actual evidence of record. (Tr. 47).

The finding by the ALJ that "there is no evidence of sensory or reflex loss or motor deficit" is not supported by the record.

The Plaintiff's medical records reflect problems with neck pain and numbness from January 2005. His treating physician, Dr. McAuley, referred the Plaintiff for an MRI in April 2007 which showed degenerative disc disease, a small left paracentral disc herniation at C5-6 and a probable osteophyte disc bulge ridge to the left of C4-5. (T. 193). This MRI did show that the disc protrusion at C5-6 "made contact with the cord but does not flatten it or rotate it". (Id.). Dr. McAuley then referred his patient to Dr. Williams in May of 2007 who performed an epidural steroid injection at L5-S1. (T. 186). In May 2007 the Plaintiff did not have "true radicular pain" but was still experiencing numbness in his left hand. (T. 188).

Dr. McAuley observed on his July 21, 2008 visit that Plaintiff walked "bent over and leaning to the right," and that his head was tilted and he could not hold it upright. Plaintiff complained of decreased grip strength in his left hand on his July 31, 2008 visit, where he was diagnosed with herniated nucleus pulposus of C5-6 and was noted to have less use of his left

arm. (Tr. 179)  He was diagnosed with acute spasm and pain to the neck and back, lumbar pain and spasm, cervical disc problems, and tingling in both hands that awakened him at night. (Tr. 180).

On August 5, 2008 Dr. McAuley again referred the Plaintiff for an MRI which was performed by Dr. Douglas Kerin.  Dr. Kerin noted hypertrophied uncovertebral joints at 5-6 with spinal canal narrowing, uncoverfebral joint hypertrophy at C4-5 with mild lateral recess narrowing and tiny midline disc protrusion at C3-4 but noted that there was no compression of the cervical cord or nerve rootlets at this location.(T. 214) . Dr. McAuley noted that the Plaintiff was complaining of "losing use in left arm and hand" (T. 215) and prescribed Methadone 10 mg, and Celexa 20 mg.

On August 25, 2008 a Physical RFC Assessment was performed by Dr. Ronald Crow who determined that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. He could stand and/or walk and sit for 6 hours in an 8 hour workday and he had no limitations on his ability to push and/or pull. (T. 195).  He also found that the Plaintiff had no Manipulative Limitations. (T. 197). Dr. Crow acknowledges that he had no treating or examining source statements to evaluate. (T. 200). Dr. Crow's findings were reviewed and affirmed by Dr. Bill Payne on October 1, 2008. (T. 202).[1]

We have stated many times that the results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. See, e.g., *Jenkins v. Apfel,* 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative

---

[1] It does not appear that Dr. Crow or Dr. Payne had the MRI performed on August 5, 2008.

physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id.

On 10/31/2008 Dr. McAuley prepared a Source Statement-Physical stating that the Plaintiff could occasionally lift and/or carry less than 10 pounds, could stand and/or walk and sit a total of 3 hours in an 8 hour workday (T. 211). Dr. McAuley found his postural limitations were less than 2 hours in an 8 hour day, but did not indicate any significant Manipulative Limitations. (T. 212)

Dr. McAuley prepared a Physical RFC Assessment on February 19, 2009 and noted that the Plaintiff had significant limitations in his ability reach/push/pull bilaterally and significant limitations in his ability to handle and work with small objects with his "left" hand. (T. 207). Plaintiff was diagnosed with increased paresis of the left arm, and Dr. McAuley stated he was "losing use in [his] left arm and hand." (Tr. 215). Dr. McAuley also completed a medical source statement stating that the Plaintiff would be significantly limited in the use of his left hand and arm (T. 209-210).

On July 27, 2009 Dr. McAuley prepared another Medical Source Statement and found that the Plaintiff could Frequently lift less than 10 pounds, occasionally lift less than 10 pounds, and could stand and/or walk a total of 2 hours in an 8 hour day, and sit a total of 3 hours in an 8 hour day and that he was limited in his upper extremities. (T. 219) He also felt that he could perform work activities less than 1 hour per day and that he had postural and manipulative limitations. (T. 220). He also felt he should stay away from machinery or heights. (T. 221). Dr. McAuley provided a Physical RFC Assessment as well finding that the Plaintiff could not sit or

stand for six hours, could not perform part-time work, would require unscheduled breaks, had significant limitations in his ability to reach/push/pull and to handle and work with small objects. (T. 222).

When determining disability benefits claimant's residual functional capacity (RFC), the ALJ must consider, in addition to medical evidence, the observations of treating doctors and others and the claimant's own description of his limitations. 20 C.F.R. § 404.1545. *See Willcockson v. Astrue,* 540 F.3d 878 (C.A.8 (Mo.),2008) Generally, an ALJ is obliged to give controlling weight to a treating physician's medical opinions that are supported by the record. *See Randolph v. Barnhart*, 386 F.3d 835, 839 (8th Cir.2004); 20 C.F.R. § 404.1527(d)(2). Dr. McAuley is a treating physician who treated the Plaintiff over a period of years and had ordered all of the MRI testing performed on the Plaintiff. He had completed multiple medical source statements that showed the Plaintiff had postural and manipulative limitations which were completely disregarded by the ALJ without giving adequate explanation for his reasoning.

The court also notes that the ALJ adopted Dr. McAuley's opinion concerning the Plaintiff's lifting and/or carrying capability as opposed to the consultive opinion of Dr. Crow. At the same time he completely discounts Dr. McAuley's opinion concerning the Plaintiff's postural and manipulative limitations without giving adequate reasons.

**B. Newly Submitted Evidence:**

In the present case, plaintiff filed additional medical evidence with the Appeals Council, which was reviewed and considered prior to the issuance of the Council's determination. Once it is clear that the Appeals Council has considered newly submitted evidence, the court does not evaluate the Appeals Council's decision to deny review. Instead, the court's role is limited to

deciding whether the administrative law judge's determination is supported by substantial evidence on the record as a whole, including the new evidence submitted after the determination was made.  See, e.g., *Nelson v. Sullivan,* 966 F.2d 363, 366 (8th Cir. 1992), and *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992).  Of necessity, that means we must speculate to some extent on how the administrative law judge would have weighed the newly submitted reports if they had been available for the original hearing.  We consider this to be a peculiar task for a reviewing court.  See *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994); *Bradford v. Barnhart* 2003 WL 1811534, 12 (D.Neb.) (D.Neb.,2003).

In this case Dr. Westbrook performed a General Physical examination of the Plaintiff on September 21, 2010 and found that the Plaintiff only had 20% grip strength in his left hand.  He also found the Plaintiff could not walk "heel to toe" and could not squat  (T. 278).  The Plaintiff also provided a MSS from Dr. Howell dated August 31, 2010.   Dr. Howell reported that Plaintiff could stand and/or walk a total of 2 hours, and continuously for only 1/4 of an hour before breaks. He found that Plaintiff could sit for a total of 2 hours, and continuously for only ½ hour before requiring a break. He reported that Plaintiff was limited in both upper and lower extremities in his ability to push and/or pull, and that he required 5 or more work breaks in an 8-hour workday. Dr. Howell stated that Plaintiff must elevate his lower extremities multiple times per day and that he could only perform any work activities in a normal workday continuously for 1/4 of an hour, stating impairments of the lower and upper extremities, and degenerative joint disease of the neck and lower back as the objective medical evidence supporting these limitations. He additionally found that Plaintiff could reach in all directions, handle, finger, grip, and feel for only 2 of 8 hours.

The court believe remand is necessary to allow the ALJ to consider the newly submitted evidence and to allow the ALJ an opportunity to re-evaluate the opinion of the Plaintiff's treating physicians.

**IV.     Conclusion:**

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated  this June 25, 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE